### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION

CRESTWOOD CHILD CARE & LEARNING                                   PLAINTIFF
CENTER

v.                                                      No. 3:20-cv-471-BJB

WEST BEND MUTUAL INSURANCE                                     DEFENDANTS
COMPANY, ET AL.

\* \* \* \* \*

### MEMORANDUM OPINION & ORDER

Crestwood Child Care and Learning Center is a daycare facility located in Crestwood, Kentucky.  Complaint (DN 1-2) ¶ 7.  Before the pandemic, Crestwood purchased a policy from West Bend Mutual Insurance Company.  ¶ 6; Policy (DN 28-2).  That policy provided coverage for lost business income due to "direct physical loss of or damage to" property, and for income lost if a civil authority ordered an operational shutdown "due to" non-viral outbreaks "at the insured premises."  Policy at pp. 29, 31–32, 57.  To slow the spread of COVID-19, in March of 2020, the Kentucky Cabinet for Health and Family Services issued a statewide order shuttering licensed childcare centers.  DN 1-2 at 15 (Shutdown Order).  Crestwood alleges it obeyed the order, ceased providing daycare services, and suffered economic loss totaling more than $100,000.  Complaint ¶ 13.

West Bend denied Crestwood's claim for lost earnings.  ¶ 17.  It asserted, among other things, that the "Communicable Disease" coverage set forth in the policy didn't apply because Crestwood did not suspend its operations "due to" an outbreak "at the insured premises."  DN 1-2 at 17 (Denial Letter).  The "Business Income" coverage, moreover, did not apply because the government shutdown order did not cause "direct physical loss of or damage to" property.  Complaint ¶ 17; DN 1-2 at 16–19.  And in any event, West Bend explained that coverage for loss or damage caused by the COVID-19 virus was categorically precluded by the policy's "Virus Exclusion" provision.  DN 1-2 at 16–19.

So Crestwood sued, seeking a declaratory judgment that the policy covers its losses, and also claiming that West Bend breached the contract and denied coverage in bad faith under Kentucky Law.  Complaint at pp. 8–13.  West Bend moved for judgment on the pleadings, reiterating the arguments in its denial letter.  DN 28.  Crestwood acknowledges the policy's language, but raises several policy considerations that it contends militate against West Bend's reading of the text.  Response to MJOP (DN 29) at 10–11.

1

A court reviewing a motion for judgment on the pleadings under FED. R. CIV. P. 12(c) applies the same standard that governs a motion to dismiss under FED. R. CIV. P. 12(b)(6). *See Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## I.

West Bend removed this case from state to federal court on the basis of diversity jurisdiction. The parties agree that Kentucky law applies. MJOP at 9; Response to MJOP at 8–9. Under the rules of construction applicable to insurance contracts in Kentucky, "when the terms of an insurance contract are unambiguous and not unreasonable, they will be enforced as written." *Foreman v. Auto Club Prop.-Cas. Ins. Co.*, 617 S.W.3d 345, 349 (Ky. 2021)). "Ambiguous terms and the language of exclusions," however, "are strictly construed against the insurer so as not to defeat the policyholder's reasonable expectation of coverage." *Id.* at 349–50. Kentucky courts also presume that language conveys the "ordinary meaning" an "average person" would give it. *True v. Raines*, 99 S.W.3d 439, 443 (Ky. 2003) (quoting *Foreman*, 617 S.W.3d at 349).

**\* \* \***

Crestwood argues that it may recover under three of the policy's provisions. First, the policy provides coverage if a government agency shuts down operations due to an outbreak of a communicable disease at the insured premises. *See* Policy at p. 33. Importantly, this provision *excludes* any losses caused by viral or bacterial outbreaks. *Id.* at p. 57. Second, the policy covers business income lost due to direct physical damage to the property. *Id.* at pp. 29, 36. Third, the policy covers direct physical losses caused by orders of a civil authority that prevent access to the insured premises. *Id.* at p. 31.

The policy's text and the precedents governing its interpretation confirm that West Bend did not err in denying Crestwood's claim.

## A.

The "communicable disease business income" provision provides:

> You may extend this insurance to apply to the actual loss
> of Business Income or Extra Expense that you sustain as
> the result of your "operations" being temporarily shut down
> or suspended as ordered by a local, state, or federal board

> of health or similar governmental board that has
> jurisdiction over your "operations".
>
> The shutdown or suspension must be due to an outbreak of
> a "communicable disease" or a "waterborne pathogen" at
> the insured premises as described in the Declarations.

*Id.* at p. 33.

Crestwood alleges that the Kentucky Cabinet for Health and Family Services ordered its business to close due to an outbreak of COVID-19 in Oldham County. Complaint ¶¶ 3, 12. But Crestwood did not allege that an outbreak of COVID "at the insured premises" caused the government to shutter its facility. Policy at p. 33. Instead, Crestwood contends that the Commonwealth imposed the order due to "one hundred and eleve[n] … or more confirmed cases of Coronavirus … in Oldham County, Kentucky." Complaint ¶ 10. (Though this was a statewide order that doesn't single out Oldham or any other county by name. *See* DN 1-2 at 15.) Crestwood says it "shut down and suspended its operations … for reasons *including* the confirmed cases of the Coronavirus Disease … in Oldham County, Kentucky … and [in] the best interests … of the children and families served by Crestwood Child Care." ¶ 12 (emphasis added).

An average person reviewing the terms of the policy, *see Foreman*, 617 S.W.3d at 349, would understand that it limits coverage to lost income "due to an outbreak" only if that outbreak occurs "*at* the insured premises," Policy at p. 33 (emphasis added). To interpret the contract otherwise would fail to give any effect to the phrase "at the insured premises." Relatedly, Plaintiff failed to plausibly allege that the government imposed the Shutdown Order *due to* an outbreak at the premises. By its own terms, the order was imposed "*[d]ue to the highly contagious nature of COVID-19*," which says nothing about Crestwood's facility or any other specific childcare center. DN 1-2 at 15 (emphasis added).

Recent Sixth Circuit precedent interpreting Ohio law is directly on point. *Dakota Girls v. Philadelphia Indemnity Insurance* concerned a nearly identical provision: it provided coverage for losses resulting from government shutdown orders imposed "due directly to an outbreak of a communicable disease or a water-borne pathogen that causes an actual illness *at the described premises*." 17 F.4th 645, 649 (6th Cir. 2021) (emphasis added). The Court of Appeals concluded that the provision applied only if the "illness" was "from a communicable disease *and* at the premises." *Id.* at 651. Likewise, the district court in *Paradigm Care & Enrichment Center v. West Bend Mutual Insurance*, rejected a claim for coverage under a provision covering outbreaks "at the insured premises" because "Plaintiffs failed to allege that the government shut down their respective facilities *due to an outbreak* of COVID-19…." 529 F. Supp. 3d 927, 938–39 (E.D. Wis. 2021) (emphasis in original).

3

So too here.  Crestwood does not contend that any person—employee, parent, child, or otherwise—was exposed to, diagnosed with, or suffered from COVID-19 "at the insured premises."  Policy at p. 33.  So it cannot claim an entitlement to coverage.  Furthermore, Crestwood failed to allege that the Commonwealth imposed the shutdown order *due to* any outbreak that occurred at the daycare itself.  *Dakota Girls, LLC*, 17 F.4th at 651.  Because the text of the communicable-disease outbreak provision is unambiguous, Crestwood could not have any "reasonable expectation" in remuneration for losses outside of the policy's reach.  *See True*, 99 S.W.3d at 443 ("Only actual ambiguities, not fanciful ones, will trigger application of the doctrine.").

Text notwithstanding, Crestwood alleges that the civil-authority provision as construed by West Bend contradicts sound public policy by motivating the insured to remain open long enough to register a positive COVID test on its premises—and thereby collect insurance proceeds.  *See* Response to MJOP at 11.  What a cynical outlook!  Whatever the likelihood of a daycare adopting that approach to its operations and insurance, no such concerns appear here: the government's order would have shut down the facility *before* any outbreak on site, not "due to an outbreak."  Policy at p. 33.  And Crestwood's argument doesn't even work on its own terms: the policy provision insures against the government, not the business, deciding to close the facility because of an outbreak.

## B.

Crestwood next argues that the "Business Income" and "Civil Authority" provisions are implicated by the shut down order.  Those provisions provide:

### b. Business Income

\*\*\*

We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 1,000 feet of such premises….

\*\*\*

### e. Civil Authority

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises….

Policy at pp. 29, 31.

Neither provision helps Crestwood because each depends on a physical loss, something Crestwood cannot show. The clauses both refer to a "Covered Cause of Loss," which the policy defines as a "[d]irect physical loss unless the loss is excluded or limited." *Id.* at p. 27.

In *Estes v. Cincinnati Insurance Company,* the Sixth Circuit held that the plain meaning of "physical loss or damage" requires an actual, tangible deprivation or destruction of property. 23 F.4th 23 F.4th 695, 700 (6th Cir. 2022). As the court explained in denying coverage in a similar insurance policy, the term "physical loss" conveys to the "average person" that a person who owns property has been "tangibly deprived" of their property or that his property has been "tangibly destroyed." *Id.* (quotations omitted).

The uniform precedent of this Court is in accord. Several judges facing similar provisions have interpreted "civil authority" provisions that required "direct physical loss of or damage to property" as covering neither COVID-19 shutdown orders nor the presence of COVID-19 itself. *See, e.g., Schroeder Publ'g Co. v. Great N. Ins. Co.*, No. 5:20-cv-108, 2022 WL 68959, at *3 (W.D. Ky. Jan. 6, 2022); *Wild Eggs Holdings v. State Auto Prop. & Cas. Ins.*, No. 3:20-cv-501, 2021 WL 4234940, at *7–11 (W.D. Ky. Sept. 16, 2021); *Renaissance/The Park, LLC v. Cincinnati Ins. Co.*, No. 3:20-cv-864, 2021 WL 4429796, at *5–7 (W.D. Ky. Sept. 27, 2021); *Bluegrass Oral Health Center v. Cincinnati Ins. Co.*, No. 1:20-cv-120, 2021 WL 1069038, at *2–3 (W.D. Ky. Mar. 18, 2021).

Crestwood urges an idiosyncratic reading of its policy language that would, at least in its view, avoid the force of these precedents. It asks the Court to look past the policy's definition of "Covered Cause of Loss" as "direct physical loss," and to instead conflate "Covered Cause of Loss" with any coverage offered in the contract, including closure orders issued by civil authorities. *See* Response to MJOP at 11. It asserts the shutdown order is a "covered cause of loss" on the assumption that the phrase "government actions" qualifies as a "physical loss or damage to property," which is quite an assumption indeed. Response to MJOP at 9–10 ("Governmental actions are a covered cause of loss and, therefore, a direct physical loss."). This has things backwards: a loss must be physical to be covered, rather than physical because

it is covered.  Crestwood's capacious and unsupported interpretation would render the defined term "Covered Cause of Loss" mere surplusage.  It would also neuter the policy's actual discussion of government actions.  As between that citation-free interpretation and the reading endorsed by the Sixth Circuit and several judges within the Western District of Kentucky, the choice is clear.

Further corroboration appears in the policy's "Virus Exclusion" clause.  That provision specifically eliminates coverage for "loss or damage caused by or resulting from … [a]ny virus."  Policy at p. 57.  This obviously includes the novel coronavirus.  Yet Crestwood would construe the exclusion to apply only to cases in which the virus is physically present at the insured's premises (a position at odds with not only the text, but also its own interpretation of the communicable-disease provision discussed above).

Alternatively, Crestwood points to the shutdown order—not the virus itself—as the cause of their loss.  But nothing supports such a narrow reading of the broad contractual terms "caused by or resulting from."  Policy at p. 27.  And nothing limits the language of the exclusion to only those viruses present at the insured premises, and not viruses found elsewhere that cause the "civil authority" to shut down those premises.  *See J&H Landmark, Inc. v. Twin City Fire Ins. Co.*, No. 5:20-cv-333, 2021 WL 922057, at *4 (E.D. Ky. Mar. 10, 2021) (virus exclusion does not "require[] … that the virus activity be *at* the Covered Premises").

That the government order to close was more proximate to the loss of income than the virus itself does not preclude the virus from also being a cause of the closure and subsequent loss of business income.  The Commonwealth imposed the order specifically in response to the virus's spread in Kentucky.  The text of the shutdown order confirms that.  DN 1-2 at 15 ("*Due to* the highly contagious nature of *COVID-19*, Kentucky is ordering … child care programs shutdown by close of business on Friday, March 20, 2020, until further notice." (emphasis added)).  This district court, and others nationwide, have consistently reached the same conclusion, holding that the coronavirus proximately caused government shutdown orders.  *See, e.g., Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, No. 20 C 5472, 2021 WL 679227, at *4 (N.D. Ill. Feb. 22, 2021) (collecting cases); *see also Evans v. Auto Club Prop.-Cas. Ins. Co.*, No. 3:18-cv-486, 2020 WL 807531, at *4 (W.D. Ky. Feb. 18, 2020) (a cause upstream of an excluded intervening cause may still "proximately cause" a covered loss under Kentucky law).

## II.

Crestwood also alleges that when West Bend denied his insurance coverage, it acted in bad faith, violated the Kentucky Insurance Code, and violated the Kentucky Unfair Claims Settlement Practices Act.  Complaint at pp. 8–13.  These claims, like

the declaratory-judgment claim, fail because the policy did not require West Bend to cover Crestwood's losses in the first place.

Kentucky law uses the same three-party test for both common-law and statutory bad-faith claims. *See Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 527 (6th Cir. 2006). First, the policy's terms must oblige the insurer to pay the claim. *See Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993). Second, the insurer must lack any reasonable basis in law or fact to deny the claim. *Id.* Third, the insurer must know (or recklessly disregard) that it has "no reasonable basis" for denying the claim. *Id.*

Crestwood's bad-faith claims fail to satisfy any of these elements. Based on the interpretation explained above, Crestwood cannot establish an obligation on the part of West Bend to pay his claim without first establishing an outbreak at the premises or direct tangible physical damage to property. And without a contractual obligation, Crestwood's bad-faith claim cannot pass muster. *See Ky. Nat'l Ins. Co. v. Shaffer*, 155 S.W.3d 738, 742 (Ky. Ct. App. 2004).

### Order

This Court grants West Bend's motion for judgment on the pleadings (DN 28) and grants the Defendant's motions for leave to file supplemental authority (DNs 19, 31, 32, 33).

Benjamin Beaton, District Judge

United States District Court

March 3, 2022

7